United States District Court
Southern District of Texas
**ENTERED**
February 19, 2025
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VIOLA E.,[1] | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 4:24-cv-1107 |
| | § | |
| MARTIN O'MALLEY, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM AND ORDER

Plaintiff Viola E. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act") and supplemental security income benefits under Title XVI of the Act.[2] Plaintiff filed a motion for summary judgment. Pl.'s MSJ, ECF No. 8. Commissioner filed a response, requesting the decision be affirmed. Def.'s Response, ECF No. 11.

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On April 29, 2024, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 3.

1

Accordingly, the Court construes the Commissioner's response as a cross-motion for summary judgment. *Bacot v. O'Malley*, No. 4:23-cv-3233, 2024 WL 4329144, at *1 (S.D. Tex. Aug. 12, 2024). Plaintiff filed a reply. Pl.'s Reply, ECF No. 14.

Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that the ALJ's RFC determination is unsupported by substantial evidence and is the product of legal error because she failed to properly evaluate the opinion evidence. ECF No. 1 at 2. Commissioner counters that the ALJ properly evaluated the medical source opinions. ECF No. 11. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ failed to properly evaluate the opinion evidence in making her RFC determination. Because this is the second time the ALJ failed to properly evaluate the opinion evidence, and the record is fully developed, the Court reverses and renders judgment for Plaintiff.[3]

## I.    BACKGROUND

Plaintiff is 59 years old, R. 87, 95, 111, 127,[4] and completed high school. R. 1470. Plaintiff worked as a nurse's aide, chef, and salad preparer. R. 71–75.

---

[3] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment…reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A court may also issue a final judgment that a claimant is "entitled to any payment or payments under this subchapter." *Giles R. v. Kijakazi*, No. 4:20-cv-1220, 2021 WL 4502842, at *10 n.43 (S.D. Tex. Sept. 30, 2021) (first citing 42 U.S.C. § 405(i); then citing *Garrison v. Colvin*, 759 F.3d 995, 1023 (9th Cir. 2014) (finding the district court erred by remanding for a new hearing when nothing further in the record needed to be developed and giving instructions to remand for the calculation and award of benefits)).

[4] "R." citations refer to the electronically filed Administrative Record, ECF No. 5.

Plaintiff alleges a disability onset date of December 31, 2016. R. 96, 112. Plaintiff claims she suffers from physical and mental impairments. R. 112.

On March 4, 2019, Plaintiff filed her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, respectively. R. 95, 354. Plaintiff based[5] her application on bipolar disorder, depressive disorder, high blood pressure, diabetes, cysts (both feet), rheumatoid arthritis (both hands), high cholesterol, and plantar formatosis. R. 96. The Commissioner denied Plaintiff's claim initially, R. 96–110, and on reconsideration. R. 131–45.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 49–94. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 49–94. The ALJ issued a decision denying Plaintiff's request for benefits. R. 29–31. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. R. 4. Plaintiff sought judicial review, and the case was remanded for further administrative proceedings. R. 1666–83. Following remand from the Appeals Council, the ALJ held another hearing, and

---

[5] For Plaintiff's disability insurance claim, the relevant time period is December 31, 2016—Plaintiff's alleged onset date—through March 31, 2020—Plaintiff's last insured date. R. 95. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000). For Plaintiff's supplemental security income claim, the relevant time period is December 31, 2016 through January 18, 2024—the date of the ALJ's decision. R. 1607.

again issued a decision denying benefits.[6] R. 1641–65; 1610–38. The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision. R. 4–7.

Plaintiff appealed the Commissioner's ruling to this Court. ECF No. 1.

## II.    STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

---

[6] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step five. R. 1629. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 1613 (citing 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety/depressive disorder, degenerative disc disease of the cervical spine, angioedema, degenerative joint disease of the right knee, diabetes mellitus, peripheral neuropathy, and cataracts. *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 1613–16 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). The ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c), with the following limitations: occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; occasionally, balance, stoop, kneel, crouch and crawl; avoid concentrated exposure (which means the exposure can occur at the frequent level or below) to extreme heat, extreme cold, dangerous moving machinery (this would exclude motor vehicles), unprotected heights, wet, slippery, or uneven surfaces, vibration, and noise at the DOT level 4 (loud); occasionally push, pull, and operate foot controls bilaterally; frequently handle and finger bilaterally; exercise frequent near, far accommodations, field of vision, color vision, and depth perception; remember and follow simple instructions; and perform the tasks assigned, but not at a production rate pace—however she can meet the end of day work goals; have occasional contact with co-workers, supervisors, and the general public; occasionally adapt to changes in the workplace. R. 1617–27. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform her past relevant work as a nurse aide and salad counter attendant. R. 1627 (citing 20 C.F.R. §§ 404.1565 and 416.965). At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a). Therefore, the ALJ concluded that Plaintiff was not disabled. R. 1629.

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence

preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009) (internal quotation omitted).

## III.    THE SHIFTING BURDEN OF PROOF.

An individual claiming entitlement to disability insurance benefits and supplement security income under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987)). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises one issue: that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate the medical opinions of Dr. Sahi, Dr. Herman, Dr. Spoor, Dr. Hardaway, and Dr. Campa. ECF No. 8 at 8-15. Plaintiff contends that the ALJ failed to comply with the requirements of

20 C.F.R. §§ 404.1520c, 416.920c by not evaluating each opinion's persuasiveness. *Id.* at 8.

Plaintiff asserts that although the ALJ found Dr. Sahi's opinion "slightly persuasive," the ALJ's RFC determination that Plaintiff can perform medium exertion work, which entails "considerable lifting," contradicts Dr. Sahi's opinion that Plaintiff is capable of, at most, "moderate lifting." *Id.* at 9. Further, Plaintiff argues that although the ALJ found Dr. Herman and Dr. Spoor's opinions that Plaintiff could lift up to twenty-five pounds frequently and fifty pounds occasionally, sit for six hours, stand/walk for six hours, occasionally engage in climbing/kneeling/crouching/crawling, and use the bilateral fingers on an occasional but not frequent basis "somewhat persuasive," the ALJ asserted that the opinion was "consistent with the determination that [P]laintiff's conditions are not disabling." *Id.*

Plaintiff also asserts that, regarding Dr. Hardaway's opinion that Plaintiff is unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace, and maintain effective social interaction on a consistent and independent basis with supervisors, co-workers and the public, or cope with normal pressures in a competitive work setting, the ALJ did not explain why she determined these limitations were inconsistent with his findings[7] or why his

---

[7] Maintained eye contact, absence of confusion, independent early arrival at the appointment, grammatically correct speech, and easily established rapport. R. 973, 975–76.

examination findings[8] would serve to undermine rather than support his opinion. *Id.* at 12–13. Further, Plaintiff asserts that although the ALJ found Dr. Campa's opinion that Plaintiff has moderate limitations for several[9] cognitive/psychological functions "somewhat persuasive," the ALJ stated that the opinion was merely persuasive to the extent it can be viewed as "generally consistent with" her determination that Plaintiff's conditions "while severe, are not disabling" and further stated that the opinion was "internally inconsistent." *Id.* at 13–14.

Commissioner responds that the ALJ properly evaluated both opinions. ECF No. 11 at 16.

### A.     *The ALJ Must Analyze Each Medical Opinion's Supportability and Consistency.*

Between the third and fourth steps of the sequential analysis, the ALJ must decide the claimant's RFC, which is defined as "the most the claimant can still do despite his [or her] physical and mental limitations . . . based on all relevant evidence

---

[8] Below average abstract thinking, poor interpretation of common idioms, depressed mood, below average fund of information, below average intelligence, impaired delayed memory, inability to subtract serial 7s from 100, and below average judgment. R. 975–76.

[9] Maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and be aware of normal hazards and take appropriate precautions. R. 107–08, 123–24.

in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1999)). When making the RFC determination, the ALJ must consider all medical opinions contained in the record. 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

For claims filed on or after March 27, 2017, like the instant case, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's persuasiveness. *See Johnson v. Kijakazi*, No. 4:20-CV-04271, 2022 WL 3588042, at *3 (S.D. Tex. Aug. 22, 2022) (citing *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c)). The ALJ must "consider prior administrative medical findings and medical evidence from . . . Federal or State agency medical or psychological consultants," but is not

required to adopt those findings. *Howen v. Saul*, No. Civ. Action H-19-4358, 2021 WL 1169331, at *6 (S.D. Tex. Mar. 25, 2021) (citing 20 C.F.R. § 404.1513a(b), (b)(1)). "As with medical opinions, the ALJ must articulate how persuasive he finds each based on the consideration of the factors enumerated in 20 C.F.R. § 404.1520c(c)." *Id.* (citing 20 C.F.R. § 404.1520c(a), (b)). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Id.* (citing *Shugart*, 2022 WL 912777, at *3 (citing and quoting 20 C.F.R. § 404.1520c(c))). "Among those factors, the most important are supportability and consistency." *Johnson*, 2022 WL 3588042, at *3 (citing *Shugart*, 2022 WL 912777, at *3 (citing § 404.1520(c)(b) (2))). The ALJ "must articulate how supportability and consistency were considered." *Id.*

"The supportability and consistency factors involve different analyses and require the ALJ to explain his reasoning for his persuasiveness finding with respect to each factor." *Rai R. v. Kijakazi*, No. 4:21-CV-2270, 2022 WL 4450487, at *4 (S.D. Tex. Sept. 23, 2022) (citing *Kilby v. Kijakazi*, No. 4:20-cv-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations *presented by the medical source* increase,' and

consistency is 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, *by the entire record*.'" *Id.* (emphasis in original) (quoting *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 404.920c(c)(1)) (quoting *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021))).

### B.    *Dr. Sahi, Dr. Herman, and Dr. Spoor Provided Medical Opinions on Plaintiff's physical capabilities.*

On October 28, 2019, Department of Assistive and Rehabilitative Services referred Plaintiff to Dr. Sahi, M.D., for an evaluation[10] of Plaintiff's ability to sit/stand, walk, and lift.[11] Dr. Sahi gathered a history from Plaintiff, reviewed Plaintiff's records, and conducted her own physical examination on Plaintiff.[12] At the conclusion of her report, Dr. Sahi stated:[13]

> Based on current evidence, the patient is able to sit and stand for long period of time, walk for moderate distances and able to do moderate lifting.

As relevant to Plaintiff's RFC argument, ECF No. 8 at 8, Dr. Sahi noted in her examination that Plaintiff appears to have difficulty walking on her heels or toes and

---

[10] "It was explained to the examinee prior to evaluation the purpose of the examination…" R. 930.

[11] R. 933 (Dr. Sahi's exam notes).

[12] R. 930–33 (Dr. Sahi's exam notes).

[13] R. 933 (Dr. Sahi's exam notes).

had tenderness and reduced range of motion in the knees.[14]

On January 24, 2020, Dr. Herman, M.D., evaluated Plaintiff and stated that Plaintiff could lift up to twenty-five pounds frequently and fifty pounds occasionally, sit for at least six hours, stand/walk for six hours, occasionally engage in climbing/kneeling/crouching/crawling, and use the bilateral fingers on an occasional but not frequent basis.[15] Dr. Spoor, M.D., made the same determination.[16]

## C.    Dr. Hardaway and Dr. Campa Provided Medical Opinions on Plaintiff's Mental Capabilities.

On January 24, 2020, Dr. Hardaway, PhD, HSP, a licensed psychologist,[17] evaluated Plaintiff's concentration and abilities to persist in work-related activity, maintain effective social interaction, and cope with normal pressures in a competitive work setting.[18] Dr. Hardaway found Plaintiff to be "friendly and cooperative."[19] Dr. Hardaway noted Plaintiff's symptoms of "depressed mood"[20] and that "[h]er medical and physical conditions appear to be contributing negatively

---

[14] R. 932, 936 (Dr. Sahi's exam notes).

[15] R. 104–06, 120–22 (Dr. Herman's findings during Physical RFC Assessment).

[16] R. 141–43, 157–59 (Dr. Spoor's findings during Physical RFC Assessment).

[17] R. 977.

[18] R. 976–77 (Dr. Hardaway's exam notes).

[19] R. 975 (Dr. Hardaway's exam notes).

[20] R. 975 (Dr. Hardaway's exam notes).

to her state of mental health."[21] After putting Plaintiff through various examinations related to Plaintiff's presentation,[22] memory,[23] fund of knowledge and intelligence,[24] concentration and attention,[25] thought content and process,[26] and judgment,[27] Dr. Hardaway made the following observations about Plaintiff:[28]

> It appears that [Plaintiff] is unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace due to depression and anxiety secondary to cocaine abuse withdrawal. It appears unlikely that she could maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting. With further stabilization of symptoms, she may benefit from

---

[21] R. 977 (Dr. Hardaway's exam notes).

[22] Dr. Hardaway observed that Plaintiff sustained eye contact. Dr. Hardaway further observed that Plaintiff spoke in full, grammatically correct sentences with below average vocabulary, a normal rate of speech and normal verbal intonation, and that Plaintiff engaged in reciprocal conversation. R. 975 (Dr. Hardaway's exam notes).

[23] Dr. Hardaway noted that although Plaintiff was immediately able to repeat three words, after delay, she was able to repeat only one word. R. 976 (Dr. Hardaway's exam notes).

[24] Dr. Hardaway noted below average fund of information and intelligence, based on informal assessment. R. 976 (Dr. Hardaway's exam notes).

[25] Dr. Hardaway noted that Plaintiff could complete four digits forward and backward and count down from 20 to 1. However, Plaintiff was unable to subtract serial 7s from 100. She was able to correctly spell "world" forward and backward. R. 976 (Dr. Hardaway's exam notes).

[26] Dr. Hardaway noted that Plaintiff's thinking was goal-directed but that her abstract thinking appeared to be below average. Dr. Hardaway observed that Plaintiff struggled to interpret common idioms, but that she had greater capacity to identify similarities in word pairs. Plaintiff denied delusional thinking, thought broadcasting, obsessive thoughts, excessive fears, and current suicidal and homicidal ideations. R. 975 (Dr. Hardaway's exam notes).

[27] Dr. Hardaway noted that Plaintiff's judgment was below average. R. 976 (Dr. Hardaway's exam notes).

[28] R. 977 (Dr. Hardaway's exam notes).

vocational services for job placement assistance and/or to explore vocational options.

On February 2, 2020, Dr. Campa, Ph.D., a psychologist and state agency medical consultant,[29] evaluated Plaintiff.[30] Dr. Campa found Plaintiff markedly limited in her ability to understand and remember detailed instructions, as well as her ability to carry out such instructions.[31, 32]

### D. The ALJ's Evaluations of Each Opinion.

The ALJ determined Plaintiff's RFC as follows:[33]

After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally, balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme heat, extreme cold, dangerous moving machinery, unprotected heights, wet, slippery, or uneven surfaces, vibration, and noise at the DOT level 4 (loud). [Plaintiff] can occasionally push, pull, and operate foot controls

---

[29] R. 1626.

[30] R. 107–09, 123–25 (Dr. Campa's findings during Mental RFC Assessment).

[31] R. 107–09, 123–25 (Dr. Campa's findings during Mental RFC Assessment).

[32] Dr. Campa also found that Plaintiff has moderate limitations in her abilities to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and be aware of normal hazards and take appropriate precautions. R. 107–09, 123–25 (Dr. Campa's findings during Mental RFC Assessment).

[33] R. 1617.

bilaterally. She can frequently handle and finger bilaterally. [Plaintiff] can exercise frequent near, far, accommodations, field of vision, color vision, and depth perception. She can remember and follow simple instructions. [Plaintiff] can perform the tasks assigned, but not at a production rate pace; however she can meet the end of the day work goals. [Plaintiff] can have occasional contact with co-workers, supervisors, and the general public. She can occasionally adapt to changes in the workplace.

In reaching this determination, the ALJ considered Plaintiff's symptoms, hearing testimony, medical history, and various medical opinions, including those of Dr. Sahi, Dr. Herman, Dr. Spoor, Dr. Hardaway, and Dr. Campa.

The ALJ summarized Dr. Sahi's opinion and found it "only slightly persuasive" and explained this reasoning:[34]

> The opinion does not provide a specific function by function assessment of [Plaintiff's] abilities related to work activities as required by the Social Security Administration's regulatory provisions. Further the rather generalized and vague degree of limitation given to [Plaintiff's] ability to sit and stand as well as walk and lift is not inconsistent with the other information of record which generally is consistent with limiting [Plaintiff] to medium exertion with postural and climbing restrictions. For example, [Plaintiff] stated she is not able to lift anything to[o] heavy and exams generally show [Plaintiff] with a normal range of motion and normal strength with no tenderness or swelling regarding her musculoskeletal area and displaying a[ ] normal range of motion with normal alignment and no tenderness regarding her back. Further, x-rays found no active pathology in [Plaintiff's] knees.

In finding Dr. Sahi's opinion "slightly persuasive," the ALJ failed to explain how Dr. Sahi's findings supported her opinion, as required by § 404.1520c(b)(2) and

---

[34] R. 1625.

(c)(1). First, the ALJ's determination that the "opinion does not provide a specific function by function assessment" is of the kind that this district has found wanting. *See Cox v. Comm'r of Soc. Sec.*, No. 3:23-cv-00143, 2024 WL 3627773, at *5 (S.D. Tex. Aug. 1, 2024) ("Saying that 'there is not a great degree or specific function by function assessment'…is the same as saying that 'there is not much quantification.'"). Additionally, the ALJ deemed the degree of limitation assigned to Plaintiff's ability to sit, stand, walk, and lift "generalized and vague," which likewise does not constitute an adequate articulation of the supportability factor. *See Erlandsen v. O'Malley*, No. 4:23-cv-83-ALM-KPJ, 2024 WL 898915, at *5 (E.D. Tex. Feb. 14, 2024) (internal citations omitted) (ALJ determination that the medical opinion is "too vague" is a "boilerplate evaluation" for which the court has "serious reservations").

Notwithstanding the ALJ's erroneous supportability analysis, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (internal quotation and quotation marks omitted). For procedural error to serve as a basis for relief, Plaintiff must "show that prejudice resulted from [the] error." *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). In other words, Plaintiff must show that it is conceivable that a different administrative conclusion would have been reached, had the ALJ conducted a proper evaluation of the doctors'

17

opinions. *Nancy S. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-429-D-BK, 2023 WL 6299864, at *7 (N.D. Tex. Sept. 7, 2023) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)). Because Plaintiff did not do so, she did not show prejudice.

The ALJ assessed the consistency of Dr. Sahi's opinion with other sources, namely Plaintiff's statement, exams, and x-rays. In characterizing Dr. Sahi's degree of limitation as ultimately being in line with "medium exertion with postural and climbing restrictions" and therefore being consistent with the record (based on specific examples, i.e., the statement, exams, and x-rays), this consistency analysis provides more explanation than the analyses held insufficient in other cases. *E.g.*, *Howen*, 2021 WL 1169331, at *6 (ALJ's explanation was error because it "wholly failed to articulate…how consistent [the doctor's] opinion was with other sources"); *Nunley v. Kijakazi*, No. 4:22-cv-625, 2023 WL 2386747, at *6 (S.D. Tex. Mar. 6, 2023) ("the ALJ does not explain why the evidence he cited…is inconsistent with…[the doctor's] standing/walking limitation").

Plaintiff asserts that the ALJ's RFC determination that Plaintiff is capable of medium exertion work is inconsistent with Dr. Sahi's assessment that Plaintiff is capable of "moderate lifting." Plaintiff correctly notes that medium exertion work, by definition, involves "considerable lifting." *Titles II & XVI: Determining Capability to Do Other Work—the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983). Further, "[t]he considerable lifting required for the full range of

medium work usually requires frequent bending-stooping." *Id.* However, the ALJ

accounts for the apparent discrepancy by qualifying her language: "[Plaintiff] has

the residual functional capacity to perform medium exertion work

*except*…[Plaintiff] can *occasionally*…stoop…" R. 1617 (emphases added).

Therefore, the Court disagrees that the ALJ failed to draw the requisite "logical

bridge" between Dr. Sahi's opinion and the RFC determination. ECF No. 8 at 9.

The ALJ also summarized Dr. Herman and Dr. Spoor's opinions and found

them to be "somewhat persuasive," and explained:[35]

> Although the opinion is consistent with the determination that
> [Plaintiff's] conditions are not disabling, the opinion indicated
> [Plaintiff] can occasionally feel bilaterally appears not to be supported
> by any direct information contained in the opinion and is not wholly
> consistent with or supported by the evidence available at the hearing.
> More specifically, the evidence available to hearing level indicated
> normal sensory responses to pinprick and vibration and while
> limitations were noted in the knee joints by the examiner[]s there was
> no indication of the decreased sense of feel. In fact, on exams the
> Tinel's and Romberg tests were negative bilaterally and sensation was
> generally noted as normal.

> Out of an abundance of caution, the undersigned found the evidence as
> a whole to support limiting [Plaintiff] to frequent handling and
> fingering due to the [Plaintiff's] symptoms of chronic pain and
> difficulty in picking things up. Moreover, the evidence supports a
> finding of degeneration in [Plaintiff's] cervical spine and neuropathy
> which is not inconsistent with limiting [Plaintiff] to frequent handling
> and fingering.

---

[35] R. 1626.

R. 21. As noted above, the ALJ must explain how the doctors' findings supported their opinions, as required by § 404.1520c(b)(2) and (c)(1). To the extent the ALJ noted the absence of in-opinion support for the doctors' opinions that Plaintiff can occasionally feel bilaterally, she properly addressed supportability. Nonetheless, she erred when she looked "to the evidence in the medical record [as a whole] as opposed to the evidence" Drs. Herman and Spoor presented to support their opinions; consideration of the overall record goes to consistency and not supportability. *Kilby*, 2022 WL 1797043, at *3. However, Plaintiff did not show prejudice from the error.

Plaintiff asserts that the ALJ failed to analyze the consistency of the medical opinions with evidence from other medical and nonmedical sources in stating that "the opinion is consistent with the determination that [Plaintiff's] conditions are not disabling" and that the ALJ mischaracterized the record when she stated that the limitation to occasional bilateral feeling was not wholly consistent with or supported by the evidence available at the hearing. Plaintiff correctly notes that the first statement does not provide the requisite consistency analysis. *See Kilby*, 2022 WL 1797043, at *4 ("[T]he 'logic bridge' between the cited medical evidence and the ALJ's finding that the opinion is unpersuasive is completely absent"). However, the ALJ does not appear to have mischaracterized the record.

While "[t]he law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints," and "the subjective complaints…must be

considered along with medical evidence in determining the individual's work capacity," "[i]t is well settled that an ALJ's credibility findings on claimant's subjective complaints are entitled to deference." *Collins v. Astrue*, 493 F. Supp. 2d 858, 875–76 (S.D. Tex. 2007) (internal citations omitted). Given the ALJ's reference to Drs. Spoor and Herman's findings (which include Plaintiff's subject complaints of numbness (i.e., lack of bilateral feeling)) alongside Plaintiff's "normal sensory responses to pinprick and vibration" and mostly negative results from the Tinel's and Romberg tests[36] for bilateral feeling and sensation, "[t]he ALJ's decision clearly demonstrates that [s]he considered the medical records, along with [Plaintiff's] subjective complaints…and found that the evidence of record does not fully support the claimant's allegations about the severity of these symptoms." *Brumley v. Saul*, No. 4:20-cv-585, 2021 WL 1111045, at *2 (S.D. Tex. Mar. 23, 2021).

Plaintiff also argues that the ALJ's assessment that the limitation to occasional bilateral feeling is not wholly consistent with or supported by the evidence available at the hearing is contradicted by the ALJ's determination that the evidence supports a finding of peripheral neuropathy. However, although peripheral neuropathy is sometimes associated with a limitation of occasional feeling, it may also be

---

[36] Plaintiff takes issue with the ALJ's characterization of the Tinel's test results as "negative," pointing to a single instance of a positive test result. The Court disagrees that the ALJ mischaracterized the record evidence. *Dennis H. v. Kijakazi*, No. 4:22-cv-3501, 2024 WL 816630, at *6 n.13 (holding that the ALJ did not mischaracterize the record evidence where only one of the cited medical records favored Plaintiff's position).

associated with a limitation of frequent feeling. *Compare Halterman ex rel. Halterman v. Astrue*, Civ. Action No. 11-0630, 2012 WL 3764051, at *6 n.9 (W.D. La. July 20, 2012) ("Due to his peripheral neuropathy, [Plaintiff's] fine manipulation skills and ability to feel were limited to occasional.") *with Thompson v. Kijakazi*, Civ. Action No. 22-2149, 2023 WL 5028943, at *5 (E.D. La. July 21, 2023) ("[Plaintiff] can…feel on a frequent basis especially from a seated position; and she should not be working at heights due to peripheral neuropathy").

Plaintiff also asserts that the ALJ's statement that the evidence supports and is consistent with her RFC determination is an impermissible substitution of her own "lay opinion for the medical opinion of experts." The Court disagrees; this is not a case where "the ALJ rejected the medical opinions of treating and examining doctors alike, without contradictory evidence from a medical expert of any kind," *Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018); rather, the ALJ evaluated contradictory evidence from various tests, including the several negative Tinel's, in coming to her conclusion.

The ALJ summarized Dr. Hardaway's opinion and found it to be "only slightly persuasive," and explained:[37]

> Although the general diagnostic impression identifying the general impairments appears to be overall consistent with the evidence of record, the degree of limitation, offered, albeit somewhat vague in

---

[37] R. 1624.

degree, appears not to be wholly supported by or consistent with the direct observations or with the other evidence of record. (See Exhibits 1F19F). For example, during the exam the consultant examiner indicated the claimant was cooperative and maintained good eye contact. In addition, the examiner noted the claimant had good concentration and did not appear to be confused. Further, she was able to independently arrive at the scheduled appointment and in fact arrived early and was able to communicate in full grammatically correct sentences. In addition to sustained eye contact rapport was also noted to be easily established. These direct observations are inconsistent with the opinion that the claimant would be unlikely to sustain concentration and persist in work-related activities as well as inconsistent with the opinion the claimant would be unlikely to maintain effective social interaction with coworkers supervisors and the general public or cope with pressures in a competitive work setting.

Moreover, the evidence available at the hearing level frequently shows on mental status examinations that the claimant is alert with a normal affect and is oriented to time, place, and person with good judgment and good insight. Additionally, the evidence available to hearing level also indicates the claimant's behavior during most exams was normal and cooperative with an average fund of knowledge. (See Exhibits 13F, 15F,17F, and 19F).

In consideration of the entire record, the claimant's limitations are most consistent with being able to follow simple instructions, perform the tasks assigned but not at a production rate pace; however, being able to meet the end of day work goals, and being able to have occasional contact with coworkers supervisors and the general public as well as being able to occasionally adapt to changes in the workplace. In summary, while the undersigned agrees with the examiner that some degree of limitation exists in each of the paragraph B criteria, the evidence available to hearing level is not consistent with a finding of disabled. (See Exhibits 1F-19F, hearing testimony).

The ALJ did not provide an adequate supportability analysis because she failed to

explain how the medical evidence Dr. Hardaway presented supported[38] his opinion. The ALJ's blanket assessment that Plaintiff's sustained eye contact, absence of confusion, independent early arrival to the exam by bus, and easily established rapport fail to support Dr. Hardaway's opinion that Plaintiff is unlikely to maintain effective social interaction with coworkers, supervisors, and the general public, or cope with pressures in a competitive setting, and shows that the ALJ made no attempt to draw the requisite logical bridge between the evidence and the persuasiveness finding. *Kilby*, 2022 WL 1797043, at *4 (internal citation omitted) ("An ALJ's persuasiveness discussion is critical to his analysis and…must provide the Court with an adequate discussion of his reasons for finding a particular medical opinion to be persuasive or unpersuasive…the Court [should not be required] to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof" (internal quotation and quotation marks omitted)).

The ALJ also failed to provide an adequate consistency analysis. Although the ALJ identifies certain exam results, e.g., "alert with a normal affect and is oriented to time, place, and person with good judgment and good insight" as being "not consistent with a finding of disabled," she did not further illuminate the

---

[38] Although in her analysis the ALJ primarily used "inconsistent" rather than "does not support" or "unsupported," the ALJ nonetheless conducted a supportability analysis because she analyzed the relationship between the medical evidence relied on by the doctor and the doctor's opinion. A "case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (internal quotation omitted).

inconsistency. *See Nunley*, 2023 WL 2386747, at *6 ("the ALJ does not explain why the evidence he cited—the consultative exam showing no muscle weakness or atrophy, normal sensation in extremities, no edema, and negative Homa's sign—is inconsistent with…Dr. Ligon's standing/walking limitation"). Therefore, "the ALJ did not articulate [her]…consistency findings adequately to allow for meaningful review of [her] decision that [Dr. Hardaway's] opinion is [somewhat persuasive]." *Id.*

"Absent sufficient articulation, the [C]ourt cannot discern whether the ALJ's assessment[ ] of the persuasiveness of [this] medical opinion…[is] supported by substantial evidence and, in turn, whether the RFC assessment is supported by substantial evidence." *Howen*, 2021 WL 1169331, at *7.

The ALJ also summarized Dr. Campa's opinion and found it to be "only somewhat persuasive," and explained:[39]

> While [the opinion] is generally consistent with the determination that the claimant's conditions while severe, are not disabling, [the opinion] is internally inconsistent. At the initial level, the opinion assigns both limitations and no limitations in the claimant's ability to concentrate, persist, or maintain pace, interact with coworkers, supervisors, and the general public, as well as the ability to adapt or manage oneself. Further the reconsideration opinion indicates severe mental impairments exist, which by definition result in some degree of limitation in the claimant's abilities to perform work-related activities; however, the reconsideration consultant examiner[] assessed no degree of limitation in any of the paragraph B criteria.

---

[39] R. 1626–27.

Moreover, the evidence available to hearing level, is consistent with a finding the claimant has severe mental impairments that allow her to remember and follow instructions, while being able to perform the tasks assigned but not at a production rate pace; however she can meet the end of day work goals, and being able to have occasional contact with coworkers, supervisors and the general public as well as being able to occasionally adapt to changes in the workplace. (See Exhibits 1F-19F, hearing testimony). For example, during other consulted examinations and many mental status exams, the evidence available at hearing level shows the claimant's delayed memory to be impaired while remote memory was intact, but concentration, attention, insight, ability to interact and established rapport, and verbalize thoughts, needs, and ability to travel independently, as being within normal limits. (See Exhibits 6F, 4F, 19F, 17F, and 15F).

In sum, the above residual functional capacity assessment is supported by the evidence of record.

Here, the ALJ provided no supportability analysis because she failed to assess how Dr. Campa's findings supported his opinion. Additionally, she failed to provide the requisite consistency analysis, because she did not articulate how Dr. Campa's opinion is consistent with the overall record; the internal consistency of an opinion is irrelevant. Again, therefore, "the [C]ourt cannot discern whether the ALJ's assessment[ ] of the persuasiveness of this medical opinion…[is] supported by substantial evidence and, in turn, whether the RFC assessment is supported by substantial evidence." *Howen*, 2021 WL 1169331, at \*7.

### E.    The ALJ Committed Harmful Error Regarding Plaintiff's Mental Limitations.

"Errors alone do not justify relief from an ALJ's decision." *See id.* (citing

*Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler*, 501 F.3d at 448)). The Fifth Circuit "requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Id.* (quoting *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001)). "Prejudice can be established by showing that the additional considerations might have led to a different decision." *Id.* (quoting *Mettlen v. Barnhart*, 88 F. App'x 793 (5th Cir. 2004) (internal quotation and quotation marks omitted)).

Here, the ALJ denied Plaintiff benefits at step five of the sequential analysis,[40] determining that work exists in significant numbers in the national economy that Plaintiff could perform. R. 1629. The ALJ found Plaintiff could perform these jobs based on the VE's testimony. *Id.* Based on the current record, it is unclear whether a more limited RFC that included limitations like those Dr. Hardaway and Dr. Campa contemplated would have resulted in the VE testifying that Plaintiff could not perform her past relevant work. "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)). *See also*

---

[40] At step five, the ALJ must determine whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. 20 CFR 404.1560. If such jobs exist, then Plaintiff is not disabled.

*Brian K. L. v. Comm'r of Soc. Sec.*, No. 4:20-cv-2810, 2022 WL 902641, at *7 (S.D. Tex. Mar. 28, 2022) (The ALJ is not permitted to "substitute her opinion for that of the mental health professional, causing Plaintiff prejudice"). Therefore, the ALJ committed harmful error. Because the ALJ has failed to properly evaluate the opinion evidence a second time, and the record is fully developed, her decision should be reversed and rendered. *Giles R.*, 2021 WL 4502842, at *10 n.43 (internal citations omitted).

## V.    CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 8, is **GRANTED**, and Defendant's cross-motion for summary judgment, ECF No. 11, is **DENIED**. The Court instructs Commissioner to calculate disability and Social Security Income benefits due Plaintiff consistent with this opinion.

Signed at Houston, Texas, on February 19, 2025.

*Dena Palermo*

**Dena Hanovice Palermo**
**United States Magistrate Judge**